IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02796-NYW-NRN

JILL A. COOK,

    Plaintiff,

v.

HOME DEPOT U.S.A., INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment (the "Motion"). [Doc. 30, filed October 21, 2024]. Plaintiff Jill Cook ("Plaintiff" or "Ms. Cook") has responded in opposition, [Doc. 31], and Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") has replied, [Doc. 32]. For the reasons set forth below, the Motion for Summary Judgment is respectfully **GRANTED**.

## BACKGROUND

The following facts are undisputed unless otherwise noted. Plaintiff began working for Home Depot in 2001. [Doc. 30 at ¶ 10; Doc. 31 at 2 ¶ 10; Doc. 1 at ¶ 10]. Plaintiff suffers from a "learning disability, poor eye and hand coordination, and limited verbal skills." [Doc. 30 at ¶ 14; Doc. 31 at 2 ¶ 14; Doc. 30-6 at 11:20–12:5].[1] In 2010, Plaintiff

---

[1] Where the Court refers to the filings made in the Electronic Case Files ("ECF") system in this action, it uses the convention [Doc. ___] and identifies the page number assigned by the ECF system. When citing to a deposition transcript, the Court cites to the page and line numbers associated with the transcript, rather than the page number assigned by the Court's ECF system.

requested and received an accommodation from Home Depot that limited her work schedule to daytime hours, provided her a schedule that was as consistent as possible from week to week, and excused her from using the computer and taking tests. [Doc. 30 at ¶¶ 15–17; Doc. 31 at 2 ¶¶ 15–17; Doc. 30-8; Doc. 1 at ¶ 12]. She did not request an accommodation for Home Depot's "Respect Policy," which expects Home Depot employees to "treat fellow associates . . . with courtesy and to resolve any differences in a professional, non-abusive, and non-threatening manner." [Doc. 30 at ¶¶ 3–4, 17–21; Doc. 31 at 2 ¶¶ 3–4, 17–21; Doc. 30-3 at 4]. Home Depot's Standards of Performance ("SOPs") define several "Major Violations" of the Respect Policy, including:

- "Discriminating against an associate . . . on the basis of . . . national origin[] . . . or any characteristic protected by applicable law."

- "Engaging in any activity (including verbal, non-verbal or physical behaviors) that violates [Home Depot's] sexual harassment or general harassment policies."

- "Treating another person in an abusive, threatening, or extremely disrespectful manner."

- Initiating or participating in physical altercations or assaults, attempted assault or aggressive and/or threatening conduct."

[Doc. 30 at ¶¶ 6–7; Doc. 31 at 2 ¶¶ 6–7; Doc. 30-3 at 5]. Plaintiff testified at her deposition that she was familiar with the SOPs and knew she had to comply with them. [Doc. 30 at ¶ 12; Doc. 31 at 2 ¶ 12; Doc. 30-6 at 22:6–15]. She testified that she understood the Respect Policy to mean that she should "respect" and "be courteous" to other people, including other Home Depot employees. [Doc. 30 at ¶ 13; Doc. 31 at 2 ¶ 13; Doc. 30-6 at 25:8–21, 28:11–29:4].

In March 2019, Plaintiff transferred to Home Depot's store in Brighton, Colorado (the "Brighton store"), where she worked in the garden department. [Doc. 30 at ¶ 11;

Doc. 31 at 2 ¶ 11; Doc. 30-4 at 13:24–14:2].  In June 2021, Home Depot hired Sandukht (Sonya) Babayan ("Ms. Babayan") to work in the same store.  [Doc. 30 at ¶ 23; Doc. 31 at 2 ¶ 23; Doc. 30-13].  Ms. Babayan is a native of Armenia, spent most of her life there, and is not fluent in English.  [Doc. 30 at ¶¶ 24–25; Doc. 31 at 2 ¶¶ 24–25; Doc. 31-1 at 6:21–23, 7:10–12, 12:1–7, 38:10–11].[2]  Plaintiff and Ms. Babayan frequently worked with or near each other in Home Depot's garden department.  [Doc. 30 at ¶ 27; Doc. 31 at 3 ¶ 27; Doc. 30-6 at 60:19–25].

In May 2022, Ms. Babayan sent Home Depot a letter complaining of an incident between Ms. Babayan and Plaintiff that Ms. Babayan characterized as harassment and assault at the hands of Plaintiff.  [Doc. 30 at ¶ 28; Doc. 31 at 3 ¶ 28; Doc. 30-15 at 1].  Ms. Babayan alleged that Plaintiff "grabbed [a] hose out of my hand and pushed me away.  It was very unexpected and I almost fell."  [Doc. 30 at ¶ 29; Doc. 31 at 3 ¶ 29; Doc. 30-15 at 1].[3]  Ms. Babayan further alleged that Plaintiff "repeatedly yelled and intimidated me using verbal and physical conduct," and "even made a racial remark about my limitation in the English language."  [Doc. 30 at ¶ 30; Doc. 31 at 3 ¶ 30; Doc. 30-15 at 1].  In a written statement and subsequent interview, Plaintiff denied Ms. Babayan's account of the incident.  [Doc. 30 at ¶¶ 34–38; Doc. 31 at 3 ¶¶ 34–38; Doc. 30-16 at 2; Doc. 30-17].  Plaintiff claimed that Ms. Babayan "got mad and yelled at me in her language."  [Doc. 30

---

[2] Plaintiff purports to deny that Ms. Babayan is "not fluent in English" because, according to Plaintiff, Ms. Babayan's lack of proficiency with English goes further than simply being "not fluent." [Doc. 31 at 2 ¶ 25].  The precise degree of Ms. Babayan's English proficiency (or lack thereof) is immaterial to the Motion.  The Court deems the fact that Ms. Babayan is not fluent in English to be undisputed for purposes of the Motion.  See Fed. R. Civ. P. 56(e)(2).

[3] Plaintiff admits that Ms. Babayan made these complaints but denies the truth of Ms. Babayan's allegations.  See, e.g., [Doc. 31 at 3 ¶¶ 29–32].

at ¶ 36; Doc. 31 at 3 ¶ 36; Doc. 30-17].[4]  Home Depot found no evidence to corroborate either side of the story and took no disciplinary action against either employee.  [Doc. 30 at ¶ 41; Doc. 31 at 3 ¶ 41; Doc. 30-16 at 2; Doc. 30-4 at 97:8–25].

The conflict between Ms. Cook and Ms. Babayan continued to escalate during summer 2022.  In June 2022, a third-party vendor's employee reported that she observed Ms. Cook act "rudely" toward Ms. Babayan.  [Doc. 30 at ¶ 42; Doc. 31 at 3–4 ¶ 42; Doc. 30-18].[5]  In July 2022, Ms. Babayan complained about another incident with Plaintiff.  [Doc. 30 at ¶ 44; Doc. 31 at 4 ¶ 44; Doc. 30-19 at 2].  This time, several witnesses corroborated her complaint.  [Doc. 30 at ¶ 44; Doc. 31 at 4 ¶ 44; Doc. 30-19 at 2].  The first witness, a cashier, reported that she saw Ms. Cook "make faces" and "laugh" at Ms. Babayan, which made Ms. Babayan appear "uncomfortable" and "scared."  [Doc. 30 at ¶ 46; Doc. 31 at 4 ¶ 46; Doc. 30-19 at 1].  The other two witnesses, who worked for third-party vendors, reported observing a similar pattern of harassment by Ms. Cook toward Ms. Babayan.  [Doc. 30 at ¶¶ 47–48; Doc. 31 at 4 ¶¶ 47–48; Doc. 30-21; Doc. 30-22].  Both of these witnesses perceived Ms. Cook as "prejudiced" or "discriminating against" Ms. Babayan because Ms. Babayan is not from the United States.  [Doc. 30 at ¶¶ 47, 49; Doc. 31 at 4 ¶¶ 47, 49; Doc. 30-21; Doc. 30-22].  Plaintiff denied the incident.  [Doc. 30 at ¶ 45; Doc. 31 at 4 ¶ 45; Doc. 30-20].

---

[4] The Parties dispute Defendant's characterization of Plaintiff's written statement.  *See* [Doc. 30 at ¶ 36; Doc. 31 at 3 ¶ 36].  The content of Plaintiff's written statement is undisputed.  [Doc. 30-17].

[5] Again, Plaintiff denies the truth of the report but not the fact that the report occurred.  [Doc. 31 at 3–4 ¶ 42].  Plaintiff supports her denial of the June 2022 incident by citing to a statement she made in connection with a July 2022 incident that says, in its entirety, "Nothing occurred between me and another associate today."  [Doc. 30-20 (capitalization altered)]; *see also* [Doc. 30-4 at 72:1–20].

4

Home Depot investigated these reports. In August 2022, Plaintiff was interviewed about the reports of her interactions with Ms. Babayan. [Doc. 30 at ¶ 54; Doc. 31 at 4 ¶ 54; Doc. 30-23]. Plaintiff generally denied any recent incidents with Ms. Babayan. She did, however, tell the interviewer that she believed that "if you cannot communicate . . . you should not be in the [department]." [Doc. 30 at ¶ 55; Doc. 31 at 4 ¶ 55; Doc. 30-23 at 1]. Plaintiff stated that Ms. Babayan "cannot communicate because she does not speak the language," meaning English. [Doc. 30 at ¶ 55; Doc. 31 at 4 ¶ 55; Doc. 30-23 at 1]. Two days after Plaintiff's interview, Ms. Babayan submitted another letter complaining that she was "still under constant harassment" by Plaintiff and felt "anxious and unsafe" when she worked at the same time as Plaintiff. [Doc. 30 at ¶¶ 58–60; Doc. 31 at 5 ¶¶ 58–60; Doc. 30-27].

At this point, one of Home Depot's Territorial Associate Relations Managers ("TARM"), Susan Clay, took over the investigation. [Doc. 30 at ¶ 61; Doc. 31 at 5 ¶ 61; *see also* [Doc. 30-28]. Ms. Clay interviewed Ms. Babayan, who stated that Plaintiff was constantly "mocking" her and "always looking for" her in the store, even when they worked in different areas of the garden department. [Doc. 30 at ¶ 62; Doc. 31 at 5 ¶ 62; Doc. 30-29 at 2]. Ms. Babayan believed that Plaintiff's behavior was escalating and feared Plaintiff would damage Ms. Babayan's car or other property. [Doc. 30 at ¶ 62; Doc. 31 at 5 ¶ 62; Doc. 30-29 at 3]. Ms. Clay interviewed three other store employees who corroborated Ms. Babayan's complaints. [Doc. 30 at ¶¶ 65–67; Doc. 31 at 5–6 ¶¶ 65–67]; *see also* [Doc. 30-30; Doc. 30-32; Doc. 30-33]. One employee reported that Plaintiff would "mak[e] faces" or stare at Ms. Babayan, wait until Ms. Babayan noticed her, then "evil laugh" at Ms. Babayan and walk away. [Doc. 30 at ¶ 66; Doc. 31 at 6 ¶ 66; Doc. 30-32]. Another

5

employee, an assistant store manager, stated that he heard Plaintiff say that "people [who] don't speak English shouldn't be allowed to work [at Home Depot]." [Doc. 30 at ¶ 67; Doc. 31 at 6 ¶ 67; Doc. 30-33]. Ms. Clay then interviewed Plaintiff, who denied the allegations against her but admitted to having made Ms. Babayan feel uncomfortable. [Doc. 30 at ¶ 70; Doc. 31 at 6 ¶ 70; Doc. 30-7 at 4–5]. Plaintiff also admitted to saying that Home Depot should not hire associates who do not speak English well. [Doc. 30 at ¶ 70; Doc. 31 at 6 ¶ 70; Doc. 30-7 at 2].

Based on her investigation, Ms. Clay determined that Plaintiff "has acted unprofessionally and disrespectfully towards [Ms.] Babayan." [Doc. 30 at ¶¶ 71–72; Doc. 31 at 6 ¶¶ 71–72; Doc. 30-34 at 1]. Ms. Clay found that Plaintiff "acted unprofessionally to intimidate [Ms.] Babayan through expressive looks and non-physical actions." [Doc. 30 at ¶¶ 71–72; Doc. 31 at 6 ¶¶ 71–72; Doc. 30-34 at 1]. She further found that Plaintiff was "intentionally bullying" Ms. Babayan through her conduct. [Doc. 30 at ¶ 71; Doc. 31 at 6 ¶ 71; Doc. 30-34 at 1]. Ms. Cook concluded that Plaintiff had violated Home Depot's Respect Policy and recommended that Plaintiff "be placed on a Final" for her conduct. [Doc. 30 at ¶ 72; Doc. 31 at 6 ¶ 72; Doc. 30-34 at 2]. Plaintiff received a "Final Written" warning on August 25, 2022. [Doc. 30 at ¶ 73; Doc. 31 at 6 ¶ 73; Doc. 30-35 at 1].[6] The warning advised Plaintiff that further violations of Home Depot's SOPs would "result in additional disciplinary action up to and including termination of employment." [Doc. 30 at ¶ 73; Doc. 31 at 6 ¶ 73; Doc. 30-35 at 1].

---

[6] The final warning indicates that it was "[c]ompleted" on August 26, 2022. [Doc. 30-35 at 1]. However, the Parties do not dispute that the warning was issued to Plaintiff on August 25, 2022. [Doc. 30 at ¶ 73; Doc. 31 at 6 ¶ 73]. Any discrepancy is immaterial to the Motion.

6

In November 2022, Ms. Babayan complained that Plaintiff continued to harass her. [Doc. 30 at ¶ 74; Doc. 31 at 6 ¶ 74; Doc. 30-36; Doc. 30-37]. Another TARM, Jeff Meyer, investigated this complaint. [Doc. 30 at ¶ 76; Doc. 31 at 6 ¶ 76; Doc. 30-37]. Ms. Babayan reported to Mr. Meyer that Plaintiff had "attempted to block [Ms. Babayan] from entering the restroom" and "stalk[ed]" Ms. Babayan and "star[ed] her down for approximately 2 minutes." [Doc. 30 at ¶ 77; Doc. 31 at 6 ¶ 77; Doc. 30-38 at 1–2]. Another employee, who had intervened on Ms. Babayan's behalf in the "staring" incident, corroborated Ms. Babayan's version of that incident. [Doc. 30 at ¶ 78; Doc. 31 at 6 ¶ 78; Doc. 30-38 at 2]. Plaintiff denied the allegations. [Doc. 30 at ¶ 79; Doc. 31 at 6 ¶ 79; Doc. 30-38 at 2]. Mr. Meyer concluded that based on Plaintiff's "previous documentation" and the additional November 2022 "respect violation," "the recommendation is termination of employment for Ms. Cook." [Doc. 30 at ¶ 80; Doc. 31 at 7 ¶ 80; Doc. 30-41].[7] Plaintiff was terminated on December 9, 2022. [Doc. 30 at ¶ 81; Doc. 31 at 7 ¶ 81; Doc. 30-41].

Plaintiff requested that her termination be reviewed. [Doc. 30 at 7 ¶ 82; Doc. 31 at 7 ¶ 82; Doc. 30-42]. She contended that Ms. Babayan had been harassing her, not the other way around. [Doc. 30 at ¶ 82; Doc. 31 at 7 ¶ 82; Doc. 30-43 at 1]. Plaintiff never complained about anyone harassing her during her employment. [Doc. 30 at ¶ 83; Doc. 31 at 7 ¶ 83; Doc. 30-4 at 115:10–12]. A third TARM, Greg Foley, investigated Plaintiff's termination. [Doc. 30 at ¶ 84; Doc. 31 at 7 ¶ 84; Doc. 30-44]. Mr. Foley reviewed the circumstances leading to Plaintiff's termination, conducted his own interviews with Plaintiff and other Home Depot employees, and ultimately concluded that "[t]ermination

---

[7] Plaintiff emphasizes that Mr. Meyer presented his conclusion as a "recommendation" and argues that it is unclear who actually made the decision to terminate Plaintiff. *See* [Doc. 31 at 10–11 ¶¶ 6–10]. The Court addresses this point below.

7

is supported for Jill Cook."  [Doc. 30 at ¶¶ 84–87; Doc. 31 at 7 ¶¶ 84–87; Doc. 30-44 at 3–6].

Plaintiff filed a Formal Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") in February 2023.  [Doc. 30 at ¶ 92; Doc. 31 at 8 ¶ 92; Doc. 30-45].  She alleged her "wrongful termination" was based on "age, gender, and disability" discrimination.  [Doc. 30 at ¶ 92; Doc. 31 at 8 ¶ 92; Doc. 30-45 at 1, 3].  In her Complaint, Plaintiff alleges that EEOC issued her a Notice of Right to Sue in August 2023, [Doc. 1 at ¶ 8], which Home Depot has not disputed, [Doc. 6 at ¶ 8]; *see* [Doc. 30].

Plaintiff then filed this lawsuit.  [Doc. 1].  She brings a single claim against Home Depot for disability discrimination, in violation of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008 (collectively, "ADA"), Pub. L. No. 110–325, 122 Stat. 3553.  [Doc. 1 at ¶¶ 45–52].  *See generally* 42 U.S.C. §§ 12101–12213.  Plaintiff alleges that "Defendant Home Depot's termination of Ms. Cook without proper investigation of the facts and motives behind complaints against Ms. Cook can only be attributed to discriminatory action by Defendant Home Depot because of Ms. Cook's disabilities."  [Doc. 1 at ¶ 50].  Home Depot now seeks summary judgment in its favor on this claim.  [Doc. 30].

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way.  A fact is material if under the substantive law it is essential to the

8

proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (citation and quotations omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). In considering the evidence in the record, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court views the record in the light most favorable to the nonmovant. *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019).

## ANALYSIS

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Because Plaintiff alleges no direct evidence of disability discrimination, the *McDonnell Douglas* burden-shifting framework governs her ADA claim. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff bears the initial burden to establish a prima facie case of discrimination. *Lincoln*, 900 F.3d at 1192. To demonstrate a prima facie case of discrimination, Plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) she was otherwise qualified for her job regardless of her disability; and (3) she was terminated because of

9

her disability.  *See id.*  If she succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination.  *Cummings v. Norton*, 393 F.3d 1186, 1189 (10th Cir. 2005) (citing *McDonnell Douglas*, 411 U.S. at 802–03).  The burden then shifts back to the plaintiff to show that the defendant's stated reason is a pretext for discrimination.  *Id.*

For purposes of the Motion, the Court assumes without deciding that Plaintiff has satisfied the first step of *McDonnell Douglas* and established a prima facie case of discrimination.[8]  *See Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1308 (10th Cir. 2017) (assuming without deciding that the plaintiff had established a prima facie case for her disability discrimination claim).  Proceeding to the second step, Defendant has met its "exceedingly light" burden to state a non-discriminatory reason for Plaintiff's termination.  *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation omitted).  Specifically, Home Depot has adduced sufficient facts to allow the factfinder to conclude that Home Depot terminated Plaintiff after determining that she had violated the Respect Policy by harassing Ms. Babayan mere months after receiving a final warning for the same conduct.  [Doc. 30 at ¶¶ 80, 84–77; Doc. 31 at 7 ¶¶ 80, 84–87; Doc. 30-41;

---

[8] Because the Court determines that Plaintiff has failed to satisfy her burden at the third step of *McDonnell Douglas*, the Court does not resolve Defendant's argument that Plaintiff cannot establish a prima facie case of discrimination because she provides no evidence that she was terminated "because of" her disability.  [Doc. 30 at 21–24].  Nor does the Court consider Defendant's argument in its Reply that Plaintiff is not "disabled" for purposes of the ADA.  [Doc. 32 at 5–8].  Defendant waived this argument by failing to raise it in the Motion.  *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[A] party waives issues and arguments raised for the first time in a reply brief.").  But this Court notes that Plaintiff concedes that she must be able to show that Defendant's legitimate, non-discriminatory reason for terminating her employment was pretext for illegal discrimination to prevail on summary judgment.  [Doc. 31 at 12].  Thus, the Court focuses on the pretext analysis.

Doc. 30-44 at 3–6]. *See Dewitt*, 845 F.3d at 1308 (finding that defendant "easily satisfied its burden under the second prong" by pointing to evidence that plaintiff engaged in misconduct while subject to a "Last Chance Agreement"). The Court thus focuses its inquiry on the third step of *McDonnell Douglas* and considers whether Plaintiff has demonstrated a genuine dispute of fact with respect to whether Home Depot's stated reason for terminating her was pretextual.

"To survive a motion for summary judgment at the pretext step, the plaintiff must present evidence to establish there is a genuine issue of material fact as to whether the defendant's articulated reason for the adverse employment action was pretextual." *DePaula*, 859 F.3d at 970. A plaintiff may show pretext "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence." *Id*. (quotation omitted) But the Court's inquiry is "limited" to whether the individuals responsible for terminating the plaintiff "honestly believed [their] stated reason for terminating [the plaintiff's] employment and acted in good faith on that belief." *Dewitt*, 845 F.3d at 1310. Accordingly, the Court "examine[s] the facts as they appear to the person making the decision, and do[es] not look to the plaintiff's subjective evaluation of the situation." *DePaula*, 859 F.3d at 971 (cleaned up).

Home Depot argues that its "decision to terminate Plaintiff was based on three separate investigations, multiple witness interviews, multiple witness statements, and Plaintiff's documented history of prior violations of the Respect Policy." [Doc. 30 at 26]. Home Depot contends that there is "no evidence" that it "did not honestly believe that

11

Plaintiff had violated the Respect Policy or that it did not base its termination decision on that good faith belief." [*Id.*].

Plaintiff's counterarguments are largely unresponsive to the issue of pretext. To start, she suggests that her behavior toward Ms. Babayan was caused by her disability and argues that "[t]erminating Plaintiff with no effort to accommodate her disability was discrimination." [Doc. 31 at 13]. But as Defendant points out, it is undisputed that Plaintiff has never requested an accommodation for the Respect Policy or contended that her disability prevents her from understanding or complying with the Respect Policy. *See* [Doc. 30 at ¶¶ 19–21; Doc. 31 at 2 ¶¶ 19–21].[9] Moreover, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that the ADA "does not require employers to accommodate disabled employees by overlooking a past violation of a workplace rule, regardless of whether that violation was caused by the employee's disability." *Dewitt*, 845 F.3d at 1316; *see also Davila v. Qwest Corp., Inc.*, 113 F. App'x 849, 854 (10th Cir. 2004) ("[E]xcusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA."). Plaintiff cites no legal authority or evidentiary support for her position that the ADA required Home Depot to give her an unrequested accommodation before terminating her for violating company policy. And while Plaintiff may believe that Home Depot could or should have handled her conduct differently, the Court cannot "second guess the business judgment of the

---

[9] Because Plaintiff's failure-to-accommodate theory is insufficient to defeat the Motion, the Court does not reach whether Home Depot could prevail on an affirmative defense that Plaintiff failed to exhaust her administrative remedies as to this theory. [Doc. 32 at 8 (citing *Clark v. 10 Roads Express, LLC*, No. 23-3067, 2023 WL 6997397, at *1 (10th Cir. Oct. 24, 2023)) (further citations omitted)].

12

employer." *Dewitt*, 845 F.3d at 1307 (quotation omitted).  Thus, Plaintiff's failure-to-accommodate arguments do not raise a genuine factual issue as to whether Home Depot's stated reason for terminating her was pretextual.

Plaintiff next points out that "Ms. Babayan's allegations of disrespect by Plaintiff are all being made indirectly by Ms. Babayan's son, a management employee of Defendant, because Ms. Babayan is incapable of making either verbal or written complaints in fluent English."  [Doc. 31 at 13].  Ms. Babayan's son, Plaintiff theorizes, "would be the perfect accomplice to create the impression that Plaintiff has violated the Respect Policy."  [*Id.*].  But Plaintiff points to no evidence that Ms. Babayan's son, other than acting as a translator, participated in the investigation of Ms. Babayan's complaints or the decision to terminate Plaintiff.  Plaintiff's speculations about Ms. Babayan's and her son's attitudes toward Plaintiff are not probative of whether the Home Depot employees that decided to terminate Plaintiff honestly believed that Plaintiff had violated the Respect Policy.  *See Dewitt*, 845 F.3d at 1310 (observing that another employee's "subjective beliefs are irrelevant because she was not a decision-maker" and there was no evidence that her "animus" influenced the decision-maker's termination decision).  And to the extent Home Depot's decision-makers credited Ms. Babayan's complaints over Plaintiff's denials after interviewing them both, that is also not evidence of pretext without more.  *Est. of Bassatt v. Sch. Dist. No. 1 in the City & Cnty. of Denv.*, 775 F.3d 1233, 1240 (10th Cir. 2014) (holding that the decision to believe one employee over another, "when there was no direct evidence either way, is not evidence of pretext").

To the contrary, Home Depot has presented evidence that it relied on far more than just Ms. Babayan's complaints when it ultimately decided to terminate Plaintiff.

13

Numerous witnesses corroborated Ms. Babayan's complaints that Plaintiff repeatedly harassed her.  *See* [Doc. 30-21; Doc. 30-22; Doc. 30-30; Doc. 30-32; Doc. 30-38; Doc. 30-44 at 3–5].  Two different TARMs concluded, after separate investigations into separate complaints by Ms. Babayan, that Plaintiff's conduct violated the Respect Policy.  [Doc. 30-34; Doc. 30-38 at 3; Doc. 30-40].  A third, post-termination investigation concluded that Plaintiff's termination was "supported."  [Doc. 30-44 at 6].  Home Depot interviewed Plaintiff for her side of the story at every juncture and gave her a chance to change her behavior by issuing her a final warning in August 2022.  Plaintiff declined to do so, and Home Depot terminated her for her continued violations of company policy.  Although Plaintiff asserts, without evidentiary support, that it was *Ms. Babayan* who harassed *her*, [Doc. 31 at 9 ¶ 5], she identifies no evidence contradicting the "strong factual foundation" for Home Depot's conclusion that Plaintiff engaged in conduct that violated company policy, *Dewitt*, 845 F.3d at 1309–10 (reiterating that "[m]ere conjecture" cannot show pretext, where plaintiff argued that a "detailed rationale" for termination was pretextual but identified no evidence to support her subjective belief).

Finally, Plaintiff argues that "[b]ecause no one at Home Depot will admit to being the authority which terminated Plaintiff's employment, there is no one to question regarding . . . the actual reason for Plaintiff's termination."  [Doc. 31 at 13].  This argument relies on several Home Depot employees' deposition statements that suggest some ambiguity as to who exactly made the final decision to terminate Plaintiff's employment.  [*Id.* at 10–11 ¶¶ 6–9].  Mr. Meyer, the TARM who "recommend[ed]" termination, testified that it is ultimately the store manager or someone else at the "store level" who terminates an employee.  [Doc. 31-4 at 16:1–16].  Home Depot's Regional Director of Human

14

Resources, Carlos Juarez, expressed the same understanding. [Doc. 31-3 at 11:16–12:12]. But Heather Nordstrom, the store manager for the Brighton store, testified that the "determination" to terminate Plaintiff came down from Mr. Meyer and Mr. Juarez, and she merely executed that decision. [Doc. 31-2 at 33:6–34:23]; *see also* [Doc. 30-41].

To the extent there is a factual dispute as to how Ms. Nordstrom interpreted a "recommendation" from individuals higher up the corporate chain, it is immaterial to the issue of pretext. Plaintiff does not contend that anyone other than Mr. Meyer, Mr. Juarez, and Ms. Nordstrom was involved in the decision to terminate Plaintiff. Nor does she identify any facts, supported by record evidence, that any of these individuals acted on anything other than a good-faith belief, based on the facts available to them, that Plaintiff's conduct violated the Respect Policy and warranted termination. *See generally* [Doc. 31]. At bottom, despite the extensive summary-judgment record before the Court, Plaintiff has presented no evidence that would permit a reasonable jury to find that Home Depot's stated reason for terminating her was a pretext for discrimination. *See Dewitt*, 845 F.3d at 1309 (affirming summary judgment where plaintiff "identifie[d] no evidence from which a reasonable jury could rationally find that her disability, not [her misconduct], motivated her termination"). Accordingly, Defendant's Motion is respectfully **GRANTED**.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [Doc. 30] is **GRANTED**;

(2) Summary judgment **SHALL ENTER** in favor of Defendant and against Plaintiff;

15

(3) Defendant is **AWARDED** its costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1; and

(4) The Clerk of Court is **DIRECTED** to **TERMINATE** this case.

DATED: September 9, 2025

BY THE COURT:

Nina Y. Wang
United States District Judge